A97A1295. OXENDINE v. COMMISSIONER OF INSURANCE OF NORTH CAROLINA.
A97A1296. OXENDINE v. FICA MARKETING, INC.
A97A1380. OXENDINE v. FICA MARKETING, INC. et al.
(494 SE2d 545)

BIRDSONG, Presiding Judge.

These appeals have been consolidated for appellate review because they arise from proceedings concerning the insolvency of Coastal States Life Insurance Company. When Coastal States first appeared in financial difficulty, the Georgia Commissioner of Insur-

ance, under OCGA § 33-37-10, initiated a court-approved rehabilitation plan to restore the company to financial health. In that process, the Georgia Commissioner agreed to settle the claims which are the subject of this litigation. Unfortunately, the plan apparently was based upon an unrealistic projection of Coastal States' financial condition. As a result, the Georgia Commissioner of Insurance, under OCGA § 33-37-15, stepped in and forced the liquidation of Coastal States.

In liquidation proceedings of an insurance company, payment of the company's obligations are made in the following order under a classification of claims based upon statute: administrative expenses of the liquidation, wages, claims of policyholders, and claims of general creditors. OCGA § 33-37-41. These appeals concern whether and in what priority certain claims should be paid.

The Commissioner of Insurance of North Carolina's claims arose from the liquidation of Twentieth Century Life Insurance Company in North Carolina. The North Carolina Commissioner brought an action in federal court against the owners of Coastal States and Coastal States seeking restitution of over $1,700,000 that the North Carolina Commissioner alleged was taken from Twentieth Century and used as the down payment for the purchase of Coastal States. The original plan for rehabilitation of Coastal States provided for settlement of the federal action in return for periodic payments by Coastal States. Payments under the settlement were made, but when the liquidation of Coastal States was deemed necessary, the Georgia Commissioner of Insurance decided the payments should cease.

The claims of FICA Marketing, Inc., also arise from agreements reached in the first rehabilitation plan. The owners of FICA Marketing were also the owners of Coastal States. As part of the rehabilitation plan, a marketing agreement between FICA Marketing and Coastal States was canceled, and in return Coastal States was to pay the marketing fees which would otherwise become due under that agreement. When liquidation of Coastal States was deemed necessary, the Georgia Insurance Commissioner also decided to stop payments under this settlement.

FICA Marketing and the North Carolina Commissioner both claim the right of immediate payment under the initial rehabilitation claim without regard to the priorities established in OCGA § 33-37-41. In the alternative, both assert priority Class 1 claims under the statute. Although the Georgia Insurance Commissioner concedes that the North Carolina Insurance Commissioner has a valid claim, he contends that the claim is only a Class 4 general creditor priority claim. In regard to the FICA Marketing claim, the Georgia Insurance Commissioner disputes both the allowance of the claim and its priority above a general creditor priority Class 4 claim.

When these claims were submitted to the superior court supervising the liquidation of Coastal States, that court determined the claims should be paid. The lower court found that the North Carolina claims were actual and necessary costs of preserving the assets of Coastal States and that the Georgia Commissioner had already paid some of the money owed under the agreements. The lower court further determined that the FICA Marketing claims should be paid because the Georgia Commissioner agreed to pay the fees.

The Georgia Commissioner of Insurance contends the trial court erred by awarding FICA Marketing payment of marketing fees; erred by denying a right of set-off for payments made earlier; erred by holding that the claims of FICA Marketing and the North Carolina Commissioner of Insurance were not subject to prioritization under OCGA § 33-37-41; erred by holding that the claims of the North Carolina Commissioner of Insurance and FICA Marketing were entitled to Class 1 administrative priority; erred by refusing to classify the claims of the North Carolina Commissioner of Insurance and FICA Marketing as Class 4 general creditor claims under OCGA § 33-37-41; erred by entering a monetary judgment against Coastal States; erred by awarding 12 percent interest in the FICA Marketing judgment; and erred by holding that the Georgia Commissioner of Insurance had tendered to the North Carolina Commissioner of Insurance payments of $125,000 and $50,000. *Held*:

1. The trial court's decisions in these appeals must be reversed. The National Association of Insurance Commissioners created the Life & Health Insurance Guaranty Association Model Act and the Insurers Rehabilitation & Liquidation Model Act to help coordinate the rehabilitation and liquidation of insurance companies in multistate insolvencies and to ensure uniformity in the handling of insurance insolvencies. Georgia has adopted these model acts with some modifications in OCGA § 33-37-1 et seq. and OCGA § 33-38-1 et seq.

Under these statutes, the Georgia Commissioner of Insurance has primary responsibility for administering an insolvency. See OCGA §§ 33-37-55; 33-37-57. The trial court's decisions are inconsistent with the comprehensive nature of these model acts' scheme of distribution of the assets of an insolvent insurance company.

(a) The central issue in these appeals is whether parties who would otherwise be general creditors of an insurance company with Class 4 priority claims can convert their claims to Class 1 priority claims by agreeing with the rehabilitator appointed under OCGA § 33-37-11 to compromise their claims against the insurance company during the rehabilitation process. Appellees argue that by reaching such agreements their claims become costs and expenses of administration during rehabilitation and liquidation because the Georgia Insurance Commissioner, by settling their claims, in effect,

preserved the assets of the estate. Such a reading is not authorized by the plain terms of OCGA § 33-37-41 (1). Class 1 claims clearly concern "costs and expenses of administration." No reasonable definition of "costs" or "expenses" can include the claims which appellees assert. These claims are for money which appellees claim from Coastal States' estate and not administrative costs or expenses incurred. "In construing a legislative act, a court must first look to the literal meaning of the act. [Cit.] If the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms and conducts no further inquiry." *Diefenderfer v. Pierce*, 260 Ga. 426 (396 SE2d 227). Construing the statute in that manner leaves no room for the strained construction of "costs and expenses" which appellees would have us adopt. Statutory construction "must square with common sense and sound reasoning." *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367).

(b) Although the trial court found that these claims could be paid without regard to OCGA § 33-37-41, we find no support for that position. The Code section then in effect provided that the "priority of distribution of claims from the insurer's estate *shall* be in accordance with the order as set forth in this Code section." OCGA § 33-37-41. The General Assembly's intent in this regard is made more certain in the current version of OCGA § 33-37-41: "For *all* pending and future claims in insolvencies existing on July 1, 1997, and for *all* claims in future insolvencies, the priority of distribution of claims from the insurer's estate shall be in accordance with the order as set forth in this Code section." (Emphasis supplied.) Therefore, because appellees' claims were against the estate of Coastal States, the trial court was not authorized to create a new class of claims with a greater priority than those stated in OCGA § 33-37-41. Further, we do not find it significant that the Georgia Commissioner of Insurance was a party to these agreements. Participation by the Commissioner of Insurance is an expected result from the nature of rehabilitation proceedings under OCGA § 33-37-11. If any action by the Commissioner of Insurance on a claim or lawsuit in a rehabilitation proceeding were sufficient to create claims with some special priority, then any claim against the insurer's estate, which arose from an action taken during a rehabilitation resulting in a settlement approved by the Commissioner of Insurance, would also have this same special classification. The effect of such a system would be to render meaningless the priority of claims established in OCGA § 33-37-41. Statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose. *Johnson v. Housing Auth. of Atlanta*, 198 Ga. App. 816, 817 (403 SE2d 97). Further, statutes should be read according to their natural and most obvious import of

the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (391 SE2d 5). Reading these Code sections as we must, we are compelled to find that the lower court erred by finding that these claims were entitled to a special priority of payment. We also do not find that the provision in the agreement stating that FICA Marketing "will be paid" the marketing fees or the fact that the agreement was incorporated into the court-approved rehabilitation plan is sufficient to give this debt a special category.

2. In view of our disposition of these appeals in Division 1, supra, the Commissioner's remaining enumerations of error are moot. Accordingly, the trial court's judgments, insofar as they are affected by these appeals, are reversed and the cases remanded to the trial court for further proceedings as required as part of the liquidation proceeding to determine what amount, if any, is now owed appellees.

*Judgment reversed with direction. Ruffin and Eldridge, JJ., concur.*

DECIDED DECEMBER 2, 1997 —

*Thurbert E. Baker, Attorney General, Brenda H. Cole, Deputy Attorney General, Morris, Manning & Martin, Lewis E. Hassett, William J. Sheppard,* for appellant.
*Carr, Tabb & Pope, W. Pitts Carr, Hezekiah Sistrunk, Jr., Edwin J. Schklar, Michael S. Bailey,* for appellees.
*Hicks, Maloof & Campbell, Henry F. Sewell, Jr.,* amicus curiae.