unisys 9 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING






NO. 03-96-00167-CV




Unisys Corporation; Mellon Bank, N.A., as Trustee of the Unisys Employee Savings Thrift
Trust; Marathon Oil Company; and National City Bank, Appellants


v.



Texas Life, Accident, Health & Hospital Service Insurance

Guaranty Association, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 94-04130, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING




 


 We withdraw our previous opinion and judgment issued December 12, 1996 in this cause
and substitute the following opinion.

 We must decide whether certain annuity contracts benefitting Texas employees of Unisys
Corporation and Marathon Oil Company are covered under the Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association Act ("Guaranty Act"). (1) Appellants Unisys Corporation and
Mellon Bank, N.A., as trustee for Unisys Employee Savings Thrift Trust (collectively, "Unisys"), and
Marathon Oil Company and National City Bank as trustee for The Marathon Oil Company Thrift Plan
(collectively, "Marathon") appeal from the trial court's grant of appellee Texas Life, Accident, Health &
Hospital Service Insurance Guaranty Association's (the "Association") motion for partial summary judgment
and denial of Unisys's and Marathon's motion for partial summary judgment. The trial court rendered
judgment declaring the Association had no statutory obligations to Unisys and Marathon under the Guaranty
Act in the wake of Executive Life Insurance Company's ("Executive Life") insolvency. We will affirm the
judgment of the trial court.



BACKGROUND


 The Guaranty Act establishes the Association, a group of solvent insurers, to protect
holders of certain forms of group and individual life, accident, and health insurance policies and annuity
contracts in the event the issuing insurance company becomes insolvent. Guaranty Act §§ 2, 6. The
Association maintains a guaranty fund by assessing its member insurers. Id. § 9. Holders of contracts or
policies issued by an insolvent insurer may seek coverage from the Association. Id. § 3.

 Unisys, a Pennsylvania corporation, and Marathon, an Ohio corporation, established similar
employee benefit pension plans under federal ERISA requirements (the "plans"). See 29 U.S.C. §
1002(34) (West 1985 & Supp. 1996). ERISA requires all assets of these employee benefit plans to be
held in trust by one or more plan trustees. 29 U.S.C. § 1103(a), (c) (West 1985 & Supp. 1996). Unisys's
trustee is Mellon Bank, N.A., of Pennsylvania; Marathon's trustee is National City Bank of Cleveland (the
"bank trustees"). Employees participating in the plans contributed earnings into consolidated funds; they
then could direct their contributions into various types of investments. (2) The employees would reap any
gains but also suffer losses attributable to their chosen investments. The bank trustees provided account
statements showing the amount contributed, the type of investment chosen by the employee, and other
account information. Upon retirement, an employee could direct the bank trustee of its plan to withdraw
an amount from the consolidated funds and purchase an individual annuity account which would provide
a fixed rate of return. (3) In order to guarantee the fixed interest rates, in 1987 and 1988 the bank trustees
deposited accumulated contributions of participating employees with Executive Life by purchasing Group
Limited Deposit Pension Contracts. (4) In April 1991, the California Insurance Commission placed Executive
Life in conservatorship; in December 1991 it declared the company insolvent. Neither Unisys nor
Marathon, nor their bank trustees, were incorporated in Texas, but at the time of Executive Life's 
insolvency, over seven hundred Unisys and Marathon employees residing in Texas had invested over
$2,644,000 in Executive Life group annuity contracts. The employees have been compensated for about
seventy percent of their contributions pursuant to a rehabilitation plan approved by the California Superior
Court. Unisys and Marathon sought compensation from the Association for approximately $793,000 in
uncompensated losses of their employees resulting from Executive Life's insolvency. (5)

 In January 1993, the Board of Directors of the Association unanimously adopted a
resolution that the Association would provide coverage for Executive Life Guaranteed Interest Contracts
(GICs) as unallocated annuity contracts as defined by the Guaranty Act. The Association interpreted its
resolution to exclude from coverage the Unisys and Marathon contracts held by the nonresident bank
trustees. The Association also entered into an Enhancement Agreement, part of the rehabilitation plan,
involving Aurora National Life Assurance Company. Under this agreement state guaranty associations
could fulfill their statutory obligations to covered Executive Life policy holders by making payments to
enable Aurora to reinsure and assume Executive Life's contracts.

 Due to controversy precipitated by its resolution, the Association sought a declaratory
judgment that it owed no obligation under the Guaranty Act to the Unisys or Marathon plans. The trial
court granted the Association's motion for partial summary judgment, finding that the Association owed
Unisys and Marathon no statutory obligation and properly excluded Unisys and Marathon plan participants
from coverage under the Enhancement Agreement. (6) Unisys and Marathon appeal.



DISCUSSION



 In two points of error, Unisys and Marathon assert that the trial court erred in granting the
Association's motion for summary judgment and denying Unisys's and Marathon's motion for summary
judgment. In its judgment, the trial court declared that (1) the GICs at issue in this case are "unallocated
annuity contracts" as defined by the Guaranty Act; (2) the "contract holder" of the GICs was the bank
trustee; and (3) the Association is not required to provide coverage for any GICs held by a bank trustee
who was not a Texas resident at the time of Executive Life's impairment. As the parties agree there is no
factual dispute, we must determine whether the court erred as a matter of law in determining the Executive
Life contracts are not covered by the Guaranty Act. See Johnson v. City of Fort Worth, 774 S.W.2d
653, 656 (Tex. 1989).

 The parties do not dispute that the contracts at issue are group annuity contracts which are
generally covered under the Guaranty Act. The gist of Unisys's (7) multifarious appeal is that the contracts
at issue are allocated annuity contracts owned by the participating employees, who are Texas
residents, not unallocated annuity contracts owned by the nonresident bank trustees. Unisys frames
its appeal within the statutory language in effect in 1991, when Executive Life was declared insolvent. The
Association's motion for summary judgment and the trial court's judgment incorporate language used in
the subsequent amendment (the "1992 Act"), (8) which ordinarily would apply only in proceedings initiated
against an insurer declared insolvent on or after January 1, 1992. Executive Life was declared insolvent
on December 6, 1991. Although an election clause (9) permitted the Association to assume its responsibilities
under the 1992 Act, the record does not support such an unequivocal election in this cause. Deposition
testimony shows the Association followed the 1992 Act for procedural purposes but conducted its
substantive analysis of its obligations under the act in effect in 1991. We, therefore, conclude that the
Association did not "elect to assume its responsibilities" under the 1992 Act. Although we agree with
Unisys that the prior act governs, we conclude that under either version of the act group annuity contracts
must be held or owned by Texas residents in order to be covered. Because we agree with the trial court
that Unisys's and Marathon's plans were not owned or held by Texas residents, either enactment leads to
the result that the Association is not obligated to Unisys and Marathon. In an abundance of caution, this
opinion will refer to both enactments. We will also address Unisys's argument that the court should have
liberally construed the statute in order to compensate these Texas employees.




I. The Guaranty Act

 Section 3(1) of the Guaranty Act in effect when Executive Life was declared insolvent
states that the act applies to 


(a) annuity contracts, including unallocated annuity contracts except those
specifically excluded in this Act . . . ; and


(b) with respect to such policies and contracts:


 (ii) to those persons who are owners of or certificate holders under
those policies or contracts and who are residents of this State at
the time such insurer becomes an impaired insurer. . . .


The Act unambiguously covers annuity contracts held or owned by Texas residents. The trial court found
that the contracts were unallocated annuity contracts held by the bank trustees. Unisys contends on appeal
that the contracts at issue are allocated annuity contracts held or owned by the resident employees.


A. The Executive Life contracts at issue are unallocated annuity contracts.

 The Act defines an "unallocated annuity contract" as 


any annuity contract or group annuity certificate that is not issued to an individual
person including guaranteed interest contracts . . . , except to the extent any annuity
benefits under that contract or certificate are guaranteed to an individual person by an
insurer.



Id. § 5(14) (emphasis added). Unisys refuses to concede that these contracts are guaranteed interest
contracts (GICs) because the Act specifically designates GICs as unallocated annuity contracts. (10) Unisys
simply refers to the contracts as "group annuity contracts" and contends they are one type of fixed income
instrument contemplated by ERISA for employee pension plans. However, we are persuaded that the
Executive Life contracts issued to the Unisys and Marathon bank trustees are GICs and fall squarely within
the definition of unallocated annuity contracts. The Association presented testimony defining a GIC as a
contract issued by an insurance company to provide a guaranteed interest rate on the funds deposited to
the contract for a set period of time. The Association also provided expert opinion that employers
frequently purchase GICs as the vehicle for providing a fixed rate of interest to their plan participants upon
retirement. Such GICs are issued in a lump sum amount and are not allocated to any specific plan
participant. The contemplated purpose of the Executive Life contracts was to provide a fixed rate of
interest. Each contract guaranteed a specified interest rate for a period of years. The contracts even
identify themselves as GICs: "On behalf of the Trustee, you accept Executive Life's offer of a guaranteed
interest contract." Courts around the country have defined similar Executive Life contracts as GICs. See
Oklahoma Life & Health Ins. Guar. Ass'n v. The Hilti Retirement Savs. Plan, No. 82,447, slip op.
at 2 (Okla. Mar. 11, 1997); Honeywell, Inc. v. Minnesota Life & Health Ins. Guaranty Ass'n, 518
N.W.2d 557 (Minn. 1994); Board of Trustees, et al. v. Maryland Life & Health Ins. Guaranty Corp.,
642 A.2d 856 (Md. App. 1994). Guaranteed interest contracts are expressly identified as unallocated
annuity contracts under the Texas act in effect in 1991. See Guaranty Act § 5(14).

 These contracts would be unallocated annuity contracts under the 1992 Act as well. (11) 
They were not "issued to and owned by an individual" but rather were expressly issued to the bank trustee. 
For purposes of enhancing investments for retirement, insurance companies may issue contracts to
corporate entities charged with financial management of large sums of money. These were such contracts;
under their terms, no policy was issued to participating employees until the employee exercised the option
to request the bank trustee to direct Executive Life to contract individually with the participant.

 Unisys contends that the Executive Life contracts are allocated contracts because they fall
within the exception clause of the definition of unallocated annuity contract ("except to the extent any
annuity benefits under that contract or certificate are guaranteed to an individual person by an insurer"). 
See Guaranty Act § 5(14); 1992 Act § 5(13). The contracts indicate that Executive Life made no
guarantees to anyone other than the bank trustee. Specifically, the "[t]rustee may exercise every contract
right and enjoy every contract privilege without the consent of any participant." The participants had no
contractual remedy against Executive Life in the event the bank trustee acted contrary to their wishes. 
Executive Life did not owe an individual participant any benefits until the participant exercised the election,
through the bank trustee, to contract separately and individually with Executive Life. Because no benefits
were guaranteed to any individual plan participant, the Executive Life contracts do not fall within the
exception to unallocated annuity contracts.

 Unisys also argues that legislative history discloses an intent to cover individual participants
of all group annuity contracts, whether allocated or unallocated. In 1987, the legislature added the
definition of "unallocated annuity contract" to the Act and the corresponding $5,000,000 limitation to
section 5. (12) Section 5(4)(B) limits coverage to $100,000 to any one individual participant "under group
annuity policies," and to $5,000,000 to "any one contract holder" of an unallocated annuity contract. 
Guaranty Act § 5(4)(B).

 When determining legislative intent, courts may look to the language of the statute,
legislative history, the nature and object to be obtained, and the consequences that would follow from
alternate constructions. Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994). Before
1987, the Act generally provided up to $300,000 in coverage per participant of group annuity policies, with
no distinction between allocated and unallocated policies. (13) The amendment to the coverage provision
simply requires the Association to distinguish unallocated from allocated group annuity policies and to limit
coverage of unallocated policies to $5,000,000 as a whole, without regard to individual participation. The
result is that an unallocated group annuity policy with over fifty participants, each having contributed more
than $100,000, would be entitled to less coverage than a similar allocated group annuity policy. The 1987
amendments reflect an unambiguous legislative directive to distinguish between allocated and unallocated
annuities, in their coverage, in the caps placed on that coverage, and in residency requirements of the
holder. Statutes should be read as a whole and construed to give meaning and purpose to every part. Ex
parte Pruitt, 551 S.W.2d 706, 709 (Tex. 1977). 


B. The nonresident bank trustees owned or held the contracts at issue.

 The act in effect in 1991 limits coverage to "owners" or "certificate holders" of policies and
contracts who are residents. Guaranty Act § 3(1)(b)(ii). The 1992 Act specifically adds coverage to the
"contract holder" of an unallocated annuity contract who is a resident. (14) The terms "owner," "certificate
holder" and "contract holder" all refer to the party to whom the contract was issued and a contractual
obligation owed. Coverage under either act requires this party to be a Texas resident.

 These unallocated annuity contracts were not held or owned by the individual plan
participants. Rather, the contracts were specifically issued to the bank trustee, designated as the contract
owner, who held all the rights, duties and obligations under the contract.

 Unisys argues that the participating employees are beneficial owners of the contracts and
that the issue of ownership should be considered under trust law. It notes that the Act neither defines
"owner" nor limits coverage to owners of legal title to contracts. It points to ERISA provisions that
describe participants as beneficial owners of assets held in trust. See 29 U.S.C. § 1103(a), (c) (West 1985
& Supp. 1996) ("all assets of an employee benefit plan shall be held in trust by one or more trustees . . .
for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries"). Finally,
Unisys asserts that each individual participant had a significant indicia of ownership, evidenced by an
individual account, receipt of statements, the ability to select investments, and a 100% vested identifiable
interest in her share.

 While employees who contribute to benefit plans subject to ERISA requirements may be
the beneficial owners of the plan assets, under the Guaranty Act the terms "owner," "certificate holder,"
and "contract holder" refer to the legal title holder of annuity policies. Marathon's contract is specifically
issued to "National City Bank of Cleveland as trustee for Marathon Oil Company Thrift Plan"; Unisys's
contract uses similar language. Although accounting statements were provided to the individual
participants, the contracts specifically designate the bank trustee as the plan owners. Judith Markland,
presented as an expert by the Association, (15) explained that under the provisions of this type of contract,
the bank trustee has sole responsibility for all financial transactions with the insurance company. In this
case, the bank trustee deposited and withdrew aggregated funds with Executive Life. Executive Life had
no way of knowing the amounts invested or withdrawn for individual participants. The Marathon contract
states that maturity of the contract with the bank trustee would have no effect on individual contracts
Executive Life had issued to any retired participants. This indicates that the GICs were strictly between
the bank trustee and Executive Life. Individual contributors do not "own" or "hold" contracts over which
they have no control and in which they are allocated no benefits until they have elected to create individual
contracts with Executive Life via the bank trustee. (16)

 Unisys relies on Arizona Life & Disability Insurance Guaranty Fund v. Honeywell,
Inc., 927 P.2d 806 (Ariz. Ct. App. 1996, appeal pending), in which the Arizona court of appeals held the
Arizona Guaranty Act does not require ownership in the sense of legal title to the contract. Id. at 810. (17) 
Nothing in the Texas statute suggests that beneficial ownership will qualify a plan participant as a contract
holder. We join the Virginia Supreme Court in rejecting the argument that "beneficial ownership" meets
the statutory requirement that the contract be both "issued to and owned by" an individual. See Bennet v.
Virginia Life, Accident and Sickness Guaranty Ass'n., 468 S.E.2d 910 (Va. 1996).

 Because the contractual language explicitly issued the contracts to the bank trustees and
because the Act is silent as to beneficial ownership, we hold the bank trustees were the contract holders
of these Executive Life contracts. These bank trustees were foreign banks; both the act in effect in 1991
and the 1992 Act cover only resident holders of annuity contracts. Therefore the Executive Life GICs in
the Unisys and Marathon plans are not covered under either enactment.



Public Policy 

 Unisys contends that, as a matter of public policy, the legislature did not intend to leave
Texas residents unprotected by the Guaranty Act. It contends that even if the Executive Life GICs are
unallocated annuity contracts and the nonresident bank trustees are the contract holders, the Act must be
liberally construed to effectuate the legislative intention of providing coverage for all Texas employees
affected by insurance insolvency. This interpretation of the Guaranty Act is overly broad. Although the
Guaranty Act was established to compensate Texans when their insurance companies are unable to provide
promised coverage, the legislature has explicitly excluded several types of contracts and policies even when
they are held by Texas residents. See Guaranty Act § 3(2) and § 3(1)(b)(i). The presence of statutory
caps on the amount of coverage demonstrates that the Association covers some, but not all, losses. The
success of this statutory scheme depends upon a balancing of assessments, membership, and residency --
all economic concerns which the legislature has addressed. Given the Guaranty Act as a whole, we cannot
hold as a matter of law that public policy demands a different result. The Act's provision that it be liberally
construed does not permit us to ignore statutory language excluding coverage of unallocated annuity
contracts. When a court is confronted with a question of statutory construction, it must first determine
whether the statute is ambiguous. Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). "If
the meaning of the statute is clear and unambiguous, extrinsic aids and rules of construction are
inappropriate, and the statute should be given its common, everyday meaning." Glasscock Water
Conserv. Dist. v. Pruit, 915 S.W.2d 577, 580 (Tex. App.--El Paso 1996, no writ). This case illustrates
legislative restrictions, unambiguously stated, and we do not sit to reverse matters of public policy as
expressed by the legislature.

 We overrule Unisys's and Marathon's points asserting the trial court erred in granting the
Association's motion for summary judgment and in denying Unisys's and Marathon's motion for summary
judgment. (18)



CONCLUSION


 The Guaranty Act in effect in 1991 governs this appeal and provides coverage to owners
of group annuity contracts who are Texas residents. The Executive Life contracts issued to Unisys's and
Marathon's bank trustees constitute unallocated annuity contracts which are owned by nonresident bank
trustees. We affirm the trial court's judgment declaring the Association is not obligated to Unisys and
Marathon.



 


 Bea Ann Smith, Justice


Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: March 27, 1997

Publish 
1. The 1987 enactment of the statute governs this appeal. See Act of June 1, 1987, 70th Leg., R.S.,
ch. 1073, § 38, 1987 Tex. Gen. Laws 3610, 3661 (Tex. Ins. Code Ann. art. 21.28-D, since amended). 
For convenience, we will refer to this enactment of the statute as "Guaranty Act." Subsequent amendments
to the act in 1991 became effective on January 1, 1992. See Act of Aug. 25, 1991, 72d Leg., 2d C.S.,
ch.12, §1.27, 1991 Tex. Gen. Laws 252. As we will be discussing both enactments, we will refer to the
amendments as "1992 Act."
2.   For example, a Unisys employee could choose investments in 1) the Unisys Common Stock Fund,
2) the Short-Term Investment Fund, 3) the Indexed Equity Fund, 4) the Active Equity Fund, 5) the
Diversified Fund, and 6) the Insurance Contract Fund. The Marathon plan options included Eligible
Investment Companies, Cash with Interest, U.S. Savings bonds, and USX Common Stock.
3. The employees could also instruct the trustee to withdraw funds at death, disability, termination of
employment, hardship, or, upon maturity of an investment, in order to transfer to another investment.
4.   Three Executive Life contracts are at issue: Executive Life Group Limited Premium Deposit Pension
Contracts, Group Guaranteed Interest Single Deposit Defined Contribution Annuity Contracts, and Group
Excess Interest Single Deposit Defined Contribution Annuity Contracts. Neither the parties nor the trial
court treat the contracts separately; therefore, we will also treat them together. We will refer to one of
Marathon's contracts in this opinion.
5. The actual loss to each Texas resident participant is roughly $671 per person, excluding interest,
under the Unisys plan and a similar loss under the Marathon plan.
6.   The court granted the Association's motion against thirteen defendants, including Unisys and
Marathon. Marathon and Unisys's action was severed and brought on appeal. The court made separate
declarations for other defendants not parties to this appeal.
7.   Marathon adopts the arguments in Unisys's brief for purposes of its appeal. From here on, we will
simply refer to Unisys to encompass all of the appellants.
8.   Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch.12, §1.27, 1991 Tex. Gen. Laws 252, 310.
9.   Id.
10.   Marathon, on the other hand, characterizes the contracts issued to its plan as "Pension GICs."
11.   The amended act defines unallocated annuity contract as:


any annuity contract or group annuity certificate that is not issued to and owned by an
individual, except to the extent of any annuity benefits guaranteed to an individual by an
insurer under the contract or certificate.


Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch.12, §1.21, 1991 Tex. Gen. Laws 252, 286 (Tex. Ins. Code
Ann. art. 21.28-D, § 5(13), since amended).
12.  See Act of June 1, 1987, 70th Leg., R.S. ch. 1073, § 39, 1987 Tex. Gen. Laws 3610, 3662-63
(Tex. Ins. Code Ann. art. 21.28-D, § 5(4)(b), since amended).
13. The 1987 amendment reduced the limit to coverage for individual participants of group annuity
policies to $100,000.
14. Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch.12, § 1.21, 1991 Tex. Gen. Laws, 252, 283 (Tex.
Ins. Code art. 21.28-D, § 3(a)(2)(A), (b), since amended). 
15.  Unisys argues that the court should disregard Markland's opinions because statutory construction is
a question of law for the court. Johnson v. Ft. Worth, 774 S.W.2d 653, 656 (Tex. 1989). We agree
that questions of law are for the court and point to Markland's opinions merely for clarification of the
contract provisions, generally, not for interpretation of the statute.
16.  We reject Marathon's alternative argument that the plan is the owner; the plan administrator has
neither a legal nor a beneficial interest in the contracts.
17. The Arizona court then held the employees were not entitled to coverage because the contracts were
not annuity contracts. Id. at 811.
18.  Unisys and Marathon argue that if the Executive Life contracts held by their trustees are covered by
the Guaranty Act, the Association has not fulfilled its statutory obligation towards them. They claim to have
opted out of the Enhancement Agreement made by the Association with the California Insurance
Commissioner and Aurora National Life Assurance Company, and argue the Association owes them
money instead. In light of our disposition of the appeal, we need not address this argument.



 the act in 1991 became effective on January 1, 1992. See Act of Aug. 25, 1991, 72d Leg., 2d C.S.,
ch.12, §1.27, 1991 Tex. Gen. Laws 252. As we will be discussing both enactments, we will refer to the
amendments as "1992 Act."
2.   For example, a Unisys employee could choose investments in 1) the Unisys Common Stock Fund,
2) the Short-Term Investment Fund, 3) the Indexed Equity Fund, 4) the Active Equity Fund, 5) the
Diversified Fund, and 6) the Insurance Contract Fund. The Marathon plan options included Eligible
Investment Companies, Cash with Interest, U.S. Savings bonds, and USX Common Stock.
3. The employees could also instruct the trustee to withdraw funds at death, disability, termination of
employment, hardship, or, upon maturity of an investment, in order to transfer to another investment.
4.   Three Executive Life contracts are at issue: Executive Life Group Limited Premium Deposit Pension
Co