A01A0055. GEORGIA LIFE & HEALTH INSURANCE GUARANTY ASSOCIATION v. GILMAN PAPER COMPANY DEFERRED COMPENSATION SAVINGS & INVESTMENT PLAN.
(549 SE2d 751)

ELLINGTON, Judge.

Georgia Life & Health Insurance Guaranty Association ("the Association") appeals from the trial court's order granting summary judgment in favor of Gilman Paper Company Deferred Compensation Savings & Investment Plan ("the Plan") and from the order denying the Association's motion for summary judgment. This suit arises

---

[45] 49 USC § 30101 (2001).
[46] 60 FR at 13252.
[47] Id.
[48] (Punctuation omitted.) *Lewis*, supra at 1500.
[49] *Doyle*, supra at 577.

from the Plan's purchase of a guaranteed interest contract ("GIC") from a life insurance company that later went bankrupt. The Plan requested coverage for losses attributable to the GIC from the Association's guaranty fund because the Plan had participants residing in Georgia. The Association, however, denied coverage because the GIC was an unallocated annuity contract and the Plan trustee and holder of the GIC was not a Georgia resident, as required under OCGA § 33-38-2 (b) (2). The Plan sued the Association pursuant to OCGA § 33-38-1 et seq., seeking to recoup its participants' losses. Both parties moved for summary judgment. On July 1, 2000, the trial court, without opinion, denied the Association's motion for summary judgment and granted the Plan's motion. It is from this order that the Association appeals. Because we find that the GIC at issue is an unallocated annuity contract held by a nonresident trustee, and is, therefore, excluded from coverage under OCGA § 33-38-2 (b) (2), we must reverse the order of the trial court.

The standards applicable to motions for summary judgment were announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In reviewing a grant of summary judgment, this Court conducts a de novo review of the law and of the evidence, *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997), giving the opposing party the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Clark v. Cauthen*, 239 Ga. App. 226, 227 (1) (520 SE2d 477) (1999); *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). So viewed, the record reveals the following.

The Plan is a defined contribution plan established by Gilman Paper Company, a Delaware corporation based in New York, New York. The Plan, established pursuant to the Employee Retirement Income Security Act, 29 USC § 1001 et seq., and § 401(k) of the Internal Revenue Code, was designed to permit employees to save part of their incomes on a tax-deferred basis for the purpose of retirement or other significant life events. The participants contributed to the Plan by payroll deduction. They could choose from among a variety of investment fund options, could divide their contributions among those options, and could move their investment from one fund into another. However, the participants did not control investment decisions made within the funds. Those decisions were made by the Plan's investment committee.

In November 1987, the Plan invested in a GIC from Executive Life Insurance Company ("ELIC"). The ELIC GIC was issued to T. Rowe Price Company, the Plan's trustee and a resident of Baltimore, Maryland. In 1990, the Bank of New York, a New York resident, replaced T. Rowe Price as trustee. The GIC became an asset of the

Plan's Fixed Income Fund. The Association presented expert testimony explaining that a GIC is a contract issued by an insurance company which provides a guaranteed return on funds deposited with it. A GIC is a vehicle for providing a fixed rate of interest for plan participants upon their retirement. The ELIC GIC was a standard annuity contract paying a fixed annual interest of 9.4˙ percent. It was issued to the Plan's corporate trustee and not to any individual plan participant. The GIC explicitly provided: "The Trustee of the Plan named in the application is the Owner of this contract at issue. . . . The Owner may exercise every contract right and enjoy every contract privilege without the consent of any participant. Any surrender or withdrawal will be made by the Company only at the Owner's written request." There was no evidence adduced showing that any individual plan participant had an identifiable interest or specific allocation in this GIC or in any other GIC in the Fixed Income Fund. Further, the instrument creating the Plan itself provided that "[t]he sole interest of each Participant and his respective Beneficiaries under the Plan shall be to receive the benefits provided for hereunder as and when the same shall become due and payable with the terms hereof, and neither any Participant nor any such Beneficiary shall have any right, title, or interest in or to any asset of the Plan."

In 1991, ELIC was declared insolvent and ordered liquidated by the courts of its domicile state, California. At the time of ELIC's insolvency, the Bank of New York had already replaced T. Rowe Price as the Plan's trustee. ELIC's bankruptcy estate paid the Plan about 60 percent of the value of the GIC. The Plan later filed a claim with the Association seeking compensation from the Association's guaranty fund for any remaining losses. Finding that the ELIC GIC was unallocated and that the trustee who held the GIC was a nonresident, the Association denied coverage under OCGA § 33-38-2 (b) (2). For the reasons which follow, we agree that the Association's coverage decision was correct as a matter of law and that the trial court should have entered summary judgment in its favor.

1. *The Plan's ELIC GIC is an unallocated annuity contract.* The Georgia legislature adopted with few modifications the Life & Health Insurance Guaranty Association Model Act drafted by the National Association of Insurance Commissioners. See Ga. L. 1981, pp. 1336, 1337, § 1; *Oxendine v. Commr. of Ins. of North Carolina*, 229 Ga. App. 604, 606 (1) (494 SE2d 545) (1997). Although the term "unallocated annuity contract" is not defined in the Georgia Life & Health Insurance Guaranty Association Act, OCGA § 33-38-1 et seq., we are guided by the definition provided in the Model Act upon which the Georgia Act is based. In 1985, the Model Act was amended to provide: " 'Unallocated annuity contract' means any annuity contract or group annuity certificate which is not issued to and owned by an

individual, except to the extent any annuity benefits are guaranteed to an individual by an insurer under such contract or certificate." Life & Health Insurance Guaranty Association Model Act of 1985, § 5 (N).

The Association presented expert testimony on the industry definition of an unallocated annuity contract, a definition consistent with that contained in the Model Act. The expert stated that "unallocated annuity" and "unallocated funding obligation" are "terms of art connected with the fields of insurance and pension plan funding." He explained that with an allocated funding obligation, the insurer assumes the employer's duty to pay specific benefits to specific participants; however, in an unallocated funding obligation, the insurer has no contractual responsibility to the individual plan participants. Further, the expert opined that in the case of the ELIC GIC, "where there is only one owner of the contract, the plan trustee, and the contract contains no commitment from the insurer to individual plan participants, nor any allocation or apportionment by the insurer of contract interests to the individual plan participants, the annuity or funding agreement is considered unallocated." The expert's definition of an unallocated annuity contract and the expert's opinion that the ELIC GIC meets that definition are conclusions supported by case law from other jurisdictions. See, e.g., *Dynamic Systems v. Boozell*, 312 Ill. App.3d 326 (726 NE2d 1156) (2000); *Unisys Corp. v. Texas Life &c. Ins. Guaranty Assn.*, 943 SW2d 133 (Tex. App. 1997).

In *Unisys Corp.*, the Texas Court of Appeals, considering an ELIC GIC like the one at issue here, explained:

> For purposes of enhancing investments for retirement, insurance companies may issue contracts to corporate entities charged with financial management of large sums of money. These [ELIC GICs] were such contracts; under their terms, no policy was issued to participating employees until the employee exercised the *option* to request the bank trustee to direct Executive Life to contract individually with the participant. . . . The contracts indicate that Executive Life made no guarantees to anyone other than the bank trustee. Specifically, the "trustee may exercise every contract right and enjoy every contract privilege without the consent of any participant." The participants had no contractual remedy against Executive Life in the event the bank trustee acted contrary to their wishes. Executive Life did not owe an individual participant any benefits until the participant exercised the election, through the bank trustee, to contract separately and individually with Executive Life. Because no benefits were guaranteed to any individual plan participant,

the Executive Life contracts do not fall within the exception to unallocated annuity contracts.

(Emphasis in original.) Id. at 138.

Because the evidence shows that the ELIC GIC was a typical annuity contract bearing interest at a fixed rate, that it was neither issued to nor owned[1] by any individual plan participant, that its sole owner at the time of ELIC's insolvency was a corporate plan trustee, and that the GIC itself provided that no plan participants have any rights of ownership, we hold the GIC was an unallocated annuity contract. See *Dynamic Systems,* 312 Ill. App.3d at 332-335; *Unisys Corp.,* 943 SW2d at 140.

2. *Coverage for the Plan's ELIC GIC is limited by statute.* The Georgia Life & Health Insurance Guaranty Association Act was enacted for this express purpose:

> [T]o protect policy owners, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, health insurance policies, annuity contracts, and supplemental contracts, *subject to certain limitations*, against failure in the performance of contractual obligations due to the impairment or insolvency of the insurer issuing such policies or contracts.

(Emphasis supplied.) OCGA § 33-38-1. To provide this protection, the Association assesses its member insurers to fund a guaranty pool from which benefits may be paid to covered claimants. Id. The Act provides coverage for "unallocated annuity contracts issued by [its] member insurers, *except as limited by this chapter.*" (Emphasis supplied.) OCGA § 33-38-2 (a). "[I]n the case of unallocated annuity contracts," coverage under the Act extends only "to the persons who are the contract holders and who . . . [a]re residents." OCGA § 33-38-2 (b) (2) (A). Further, " '[r]esident' means any person who is domiciled in this state at the time a member insurer is determined to be an impaired or insolvent insurer and to whom contractual obligations are owed. A person may be a resident of only one state, which, in the case of a person other than a natural person, shall be its principal

---

[1] We reject the Plan's argument that because the plan participants were "beneficial owners" of the GIC, it was allocated. Every court that has considered this argument in like circumstances has rejected it. See, e.g., *Bennet v. Virginia Life, Accident &c. Assn.,* 251 Va. 382 (468 SE2d 910) (1996); *Dynamic Systems,* 312 Ill. App.3d at 332-335; *Unisys Corp.,* 943 SW2d at 140. As the *Unisys* court explained, "Individual contributors do not 'own' or 'hold' contracts over which they have no control and in which they are allocated no benefits until they have elected to create individual contracts with Executive Life via the bank trustee." *Unisys Corp.,* 943 SW2d at 140.

place of business." OCGA § 33-38-4 (13). The Plan does not contest the fact that its trustee is a nonresident. Coverage for unallocated annuity contracts under the Act is limited, "[w]ith respect to any one contract holder covered by an unallocated annuity contract . . . [to] $5 million in benefits irrespective of the number of such contracts held by that contract holder." OCGA § 33-38-7 (9). Thus, the plain language of the Act provides up to $5 million in coverage for unallocated annuity contracts, but only when those contracts are held by Georgia residents, or by nonresidents when the issuing insurer was domesticated in Georgia, neither of which is the case here. As explained in Division 1 above, the Plan's trustee is the sole holder and owner of the ELIC unallocated annuity contract. The Plan's trustee was a resident of New York. Because, at the relevant time, the ELIC GIC was owned by a nonresident trustee, the Plan failed to carry its burden of showing it was entitled to coverage. Consequently, the trial court erred in granting the Plan's motion for summary judgment and denying the Association's motion for summary judgment.

*Judgment reversed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED MAY 30, 2001.

*Mabry & McClelland, Wilbur C. Brooks, Chambers, Aholt & Rickard, Dale C. Ray, Jr.,* for appellant.
*John D. Marshall,* for appellee.