### A96A1237. G & MSS TRUCKING, INC. v. RICH.
(479 SE2d 761)

BLACKBURN, Judge.

In this case involving the Georgia Insurers Insolvency Pool (GIIP), we granted discretionary appeal to defendant G & MSS Trucking, Inc. to review the denial of its motion to reduce plaintiff William Rich's personal injury and property damage judgment for $8,852.24 to $0. G & MSS's insurer was declared insolvent after the two-year personal injury statute of limitation had expired, but prior to the running of the four-year statute of limitation for property damage. G & MSS contended that Rich's failure to first obtain benefits from his own uninsured motorist coverage bars him from claiming against the GIIP. The trial court denied G & MSS's motion, holding that because the statute of limitation expired before Rich served his uninsured motorist carrier, he had no insurance "available" when the defendant's insurer became insolvent. G & MSS also claimed the verdict should be reduced by the amount of medical expenses ($1,171.25) Rich's insurer paid. The trial court held G & MSS was not entitled to such deduction because Rich's insurer had a subrogation claim to it. We review both rulings.

1. G & MSS argues that the Georgia Insurers Insolvency Pool Act, particularly OCGA § 33-36-14 (a), required Rich to "exhaust" his claims against his own uninsured motorist insurance carrier before proceeding against the GIIP: "Any person . . . having a claim against a policy . . . issued by an insolvent insurer, which . . . is . . . a claim within the coverage of any policy issued by a solvent insurer, shall be required to exhaust first his rights under such policy issued by the solvent insurer. The policy of the solvent insurer shall be treated as primary coverage and the policy of the insolvent insurer shall be treated as secondary coverage and his rights to recover such claim under this chapter shall be reduced by any amounts received from the solvent insurers." It is true that Rich was entitled to make an uninsured motorist claim for property damage at the time G & MSS became an "uninsured motorist," because such a claim would have been within the applicable four-year statute of limitation. At that time, however, Rich had no personal injury benefit rights to "exhaust" under his uninsured motorist coverage because his claim thereto was barred by the two-year personal injury statute of limitation at the time it ripened. Under the facts of this case, plaintiff was not entitled to file an uninsured motorist claim under his own policy pursuant to the provisions of OCGA § 33-7-11 (b) (1) (D) (iv) until the

defendant's liability carrier became insolvent.

The subject automobile collision occurred on February 16, 1993, at which time Rich had $15,000 in uninsured motorist coverage for personal injury, $10,000 in uninsured motorist coverage on property, and $25,000 in medical payments coverage with Southern Trust Insurance Company. Rich filed the underlying suit on February 18, 1994, approximately one year after the collision. Commonwealth General Insurance Company, G & MSS's liability carrier, was adjudicated insolvent on September 1, 1995, more than two years, six months after the collision.

Uninsured motorist coverage is designed to provide payment for all sums which the insured is legally entitled to recover as damages from the *uninsured motorist*. OCGA § 33-7-11; see *St. Paul Fire &c. Ins. Co. v. Goza*, 137 Ga. App. 581 (224 SE2d 429) (1976); *State Farm &c. Ins. Co. v. Murphy*, 226 Ga. 710, 713 (177 SE2d 257) (1970). Here, the defendant did not become an uninsured motorist until September 1, 1995, the date of his insurance carrier's insolvency, two and one-half years after the subject incident. OCGA § 33-7-11 (b) (1) (D) (iv). Had plaintiff served his uninsured motorist carrier within the two-year personal injury statute of limitation for service upon the defendant, such carrier would have been entitled to summary judgment as defendant was not an uninsured motorist at that time. OCGA § 9-11-56; *Rabun v. Williams*, 168 Ga. App. 467, 470 (3) (309 SE2d 624) (1983). At no time during the personal injury limitation period did the elements of a valid uninsured motorist claim exist.

By September 1, 1995, the date on which Rich was first entitled to file an uninsured motorist claim, the two-year statute of limitation for personal injury had already passed. In *Bohannon v. J. C. Penney Cas. Ins. Co.*, 259 Ga. 162, 163 (377 SE2d 853) (1989), our Supreme Court stated "we have previously held that the uninsured motorist carrier must be served within the time allowed for valid service on the defendant in the tort action. *Vaughn v. Collum*, 236 Ga. 582 (224 SE2d 416) (1976). It would be possible to formulate an exception for cases where . . . it is later determined that [liability] coverage does not apply. Such a rule might allow a plaintiff to serve process within a reasonable time after it is legally determined that the negligent motorist is uninsured. But, fashioning such a rule is a task that is better left to the legislature."

Neither the legislature nor the Georgia Supreme Court has remedied the dilemma of *Bohannon*, and it is inappropriate for this Court to do so in this GIIP case. Contrary to G & MSS' assertions, *Bohannon* is not dispositive of this case. *Bohannon* addressed only the narrow issue of the application of the statute of limitation to uninsured motorist coverage under OCGA § 33-7-11 (b) (1) (D) (iii), which is not at issue here. While we are bound to follow *Bohannon*,

and do so here, it does not address the issue in the present case.

The issue here is whether or not plaintiff's uninsured motorist ·coverage constitutes such "coverage of any policy issued by a solvent insurer, [that plaintiff] shall be required to exhaust first his rights [thereunder]," under the GIIP, OCGA § 33-36-14 (a), where the uninsured motorist claim did not ripen until after the statute of limitation for its filing had run under *Bohannon*.

The four-year statute of limitation for Rich's uninsured motorist property damage claim had not expired at the time G & MSS' insurer became insolvent. See *Ga. Farm &c. Ins. Co. v. Kilgore*, 265 Ga. 836, 837 (462 SE2d 713) (1995) (noting that four-year statute of limitation covers uninsured motorist property damage claims). Because the four-year statute of limitation for property damage claims had not expired when G & MSS' liability insurer became insolvent, Rich could have claimed uninsured motorist property damage benefits from his own carrier at that time. His failure to exhaust such rights prevents his recovering from the GIIP amounts for property damage available under his uninsured motorist coverage.

As to personal injury claims, however, it would be unreasonable to find that plaintiff should be charged with having a right to recover uninsured motorist benefits for personal injury where the statute of limitation barred his claim before it had ripened. This is not a case where an insured has sat upon his rights and must now suffer the consequences of such inaction. At no time was there a right to file the personal injury uninsured motorist claim within the statute of limitation imposed by *Bohannon*. Therefore, he had no rights to exhaust. To hold otherwise would be to penalize the responsible citizen who has obtained uninsured motorist coverage, by limiting his right to recover under the GIIP, while rewarding the less responsible citizen who never obtained the coverage in the first place and would thus never face the limitation of his recovery rights under the GIIP. Therefore, the trial court properly found that Rich's failure to obtain uninsured motorist personal injury benefits does not bar his claim to GIIP funds. However, the trial court did err in failing to reduce the verdict by $2,200, the amount of property damage awarded by the jury.

2. The trial court also erred by failing to reduce the amount of Rich's judgment by the amount of medical expenses he had already ·received from his own carrier. OCGA § 33-36-14 (a) states that the injured party's rights to GIIP funds "shall be reduced by any amounts received from the solvent insurers," which have the primary duty to pay. Therefore, the trial court should have reduced the amount of medical payment benefits actually received from the final judgment. That his insurer might have a subrogation claim against G & MSS does not give plaintiff a right to collect this money from the

GIIP, or from the defendant whom the GIIP protects.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Pope, P. J., Johnson, Smith and Ruffin, JJ., concur. Beasley, C. J., Birdsong, P. J., and Andrews, J., concur in part and dissent in part.*

BIRDSONG, Presiding Judge, dissenting.

I cannot agree with the majority's main holding.

The case relied on by the majority, *Bohannon v. J. C. Penney Cas. Ins. Co.*, 259 Ga. 162 (377 SE2d 853), has nothing to do with the Georgia Insurers Insolvency Pool, and nothing said in *Bohannon* applies to a case involving an insurer who *"has become insolvent."* OCGA § 33-36-2. The GIIP ensures that insurance is available when an insurer *"has become insolvent."* Id. It exacts an assessment against solvent insurers, and its availability to a plaintiff depends on that plaintiff's diligence in *exhausting first his rights* against his own solvent insurer. OCGA § 33-36-14.

The purpose of the GIIP is to provide a remedy for covered claims "when the insurer *has become insolvent."* (Emphasis supplied.) OCGA § 33-36-2. This defendant's insurer *"has become insolvent."* The majority concedes an uninsured motorist carrier must be served within the time allowed for service on the uninsured defendant in a tort action (*Vaughn v. Collum*, 236 Ga. 582 (224 SE2d 416); *Bohannon*, supra) and this plaintiff did not serve his uninsured motorist carrier with a copy of his suit so that he could avail himself of his uninsured motorist coverage, but the majority would nevertheless force the GIIP to pay the plaintiff based on a nonsensical ideas that the plaintiff had no "right" to notify his uninsured motorist coverage of a claim *until* the defendant's insurer was declared insolvent, and that the plaintiff had no "right" to avail himself of his uninsured motorist coverage *after* the defendant's insurer was declared insolvent because the statute of limitation expired without any notice being given to his uninsured motorist carrier. This result violates the explicit terms of the GIIP Act.

OCGA § 33-36-14 (a) provides: "Any person . . . having a claim against a policy . . . issued by an insolvent insurer, which [is] a claim within the coverage of any policy issued by a solvent insurer, shall be required to exhaust first his rights under such policy issued by the solvent insurer."

*Bohannon*, supra, relied on by the majority, merely held that where an insured defendant is held not liable, if plaintiffs did not serve their own uninsured motorist carrier within the statute of limitation they cannot recover against it. That fact situation does not involve an insurer who *"has become insolvent"* (OCGA § 33-36-2), and *Bohannon* is thus inapplicable to this case.

The GIIP Act specifically anticipates that an insurer who is sol-

vent when the claim ripens *may become insolvent. Bohannon's* remark that we cannot formulate a rule allowing the statute of limitation to run from the date that it is determined that coverage does not apply is not an issue in this case.

The issue is simply whether plaintiff has "exhaust[ed] first his rights" under his own policy of insurance. According to his policy and the law, he did not give his insurer timely notice of his suit against the defendant. Had he done so, and even if his insurer had — as in *Rabun v. Williams*, 168 Ga. App. 467 (309 SE2d 624) — obtained a judgment establishing its non-liability while defendant's insurer was solvent, plaintiff would be in compliance with the GIIP Act at OCGA § 33-36-14. At least he would not be barred from recovery from the GIIP because of failure to "exhaust first his rights" under his own policy. The fact that those rights were not "ripe" until defendant's insurer became insolvent does not mean they did not exist; they were alive but quiescent until defendant's insurer became insolvent. To say the plaintiff has no "right" to anticipate that a defendant's insurer might become insolvent or might be found not liable, or to require him to wait until the defendant's insurer has become insolvent and the statute of limitation has passed before complying with the usual rule in uninsured motorist cases to serve his insurer with a copy of the suit (*Bohannon*, supra at 163) is wrong, and it deprives him of his rights under the GIIP Act.

Plaintiff may avail himself of the GIIP — which is intended to provide coverage when the liable defendant's insurer *"has become insolvent"* — even though the insolvency occurred after the statute of limitation on the plaintiff's claim expired. I cannot conceive that the legislature failed to consider the possibility that a defendant's insurer might become insolvent during litigation and after the statute of limitation expired on the claim, or that in the GIIP's requirement that plaintiff "exhaust first his claims" against his own insurer (OCGA § 33-36-14) it makes any difference whether the insurer became insolvent before or after the plaintiff's suit was filed.

I do not see how it can be said that the plaintiff has no *"right"* to notify his uninsured motorist carrier of his suit against others who may later become insolvent, when he has a right to coverage under his policy in the event of such insolvency by a defendant's insurer. The plaintiff's service on his uninsured motorist carrier of his lawsuit against the defendant is a natural precaution; the legislature certainly considered the distinct possibility that the defendant's insurer may "become insolvent" during the course of litigation, and so may the wise plaintiff. The plaintiff has a right, *if not a duty*, under OCGA § 33-36-14 to notify his solvent insurer of his suit against a defendant who may become uninsured, for if he does not do so, he can never "exhaust first his rights" under his own insurance

and can never avail himself of his rights under the GIIP and under his own policy.

Nevertheless, the majority perceives plaintiff had no "right" to serve a copy of his lawsuit on his own uninsured motorist carrier until defendant's insurer became insolvent, because if plaintiff had served his uninsured carrier with the suit he filed against the defendant before that time, plaintiff's insurer would then and there be entitled to summary judgment. I do not doubt that to be true. In the case cited by the majority, the plaintiff did not file suit against his uninsured motorist carrier (Aetna) as a defendant; he only served it with a copy of his suit against others as an advisory precaution. *Rabun v. Williams*, supra at 469. Taking no chances, Aetna won a judgment on grounds it could not be a defendant since the defendants' insurers were not insolvent. Id. at 470 (3). This ruling adjudicated Aetna's non-liability as a defendant at that time, but it did not adjudicate Aetna's liability in the event defendants' insurers later became insolvent. If they became insolvent, the plaintiff would not be barred from a later claim against his insurer Aetna; by serving the suit on his insurer he did all he could do, before the statute of limitation expired on his claim, to "exhaust first his rights" under his policy.

The majority further asserts plaintiff had no "rights" to file a claim against his uninsured motorist carrier because "under the facts of this case" pursuant to OCGA § 33-7-11 he was not entitled to file an uninsured motorist claim under his own policy until the defendant's insurer became insolvent. But that statute does not say a plaintiff has no "right" to give his uninsured motorist carrier notice of his claim against others. According to *Bohannon*, on which the majority relies, in cases not involving a claim against the GIIP an uninsured motorist carrier *must* be served within the time allowed for service on the defendant in the tort action. There is no reason to say the plaintiff *cannot* send his uninsured motorist carrier a copy of his suit against other insured defendants; the plaintiff has this right whenever he perceives a possibility that his uninsured motorist coverage may be called into play. Obviously a plaintiff could not file a *claim* against his uninsured motorist carrier until the defendant became uninsured, but giving notice to his uninsured motorist carrier of his lawsuit against a defendant who may become uninsured is entirely reasonable, and necessary under OCGA § 33-36-14. And since some such notice is *required* to exhaust his rights to coverage by his uninsured motorist carrier in the event the defendant's insurer "has become insolvent" (OCGA § 33-36-14), then it *must* be given if the plaintiff later intends to seek the benefits of the GIIP. This is not a new rule, but is simply a common sense reading of the Act.

The thrusting point is that *whenever* an insurer becomes insol-

vent and the claim is covered by a solvent insurer, the plaintiff cannot recover from the GIIP unless the plaintiff *"exhaust[s] first his rights"* under his insurer's policy. (Emphasis supplied.) The word "exhaust" in OCGA § 33-36-14 necessarily includes a requirement that plaintiff serve a copy of his suit on his own insurer within the statute of limitation of his claim and within the terms of his policy. The legislature has given the plaintiff the means by which to do this in ordinary cases, so that his solvent insurer may protect itself and may provide coverage for the claim as the GIIP Act intends. *Peoples v. State Farm &c. Ins. Co.*, 211 Ga. App. 55, 56 (438 SE2d 167). The fact that the legislature did not specify exactly how the plaintiff can "exhaust first his rights" (OCGA § 33-36-14) in cases where the defendant's insurer "has become insolvent" (id.) does not allow the plaintiff to recover against the GIIP without having done so.

Where the plaintiff knows he is proceeding against an uninsured motorist, he may list his carrier as a party defendant or not, but he has no option regarding service, for the law requires the insurer be served so it can assess its potential liability from the time litigation commences against the tortfeasor. *USF&G Ins. Co. v. Myers*, 214 Ga. App. 851, 852 (449 SE2d 359). The insured cannot avoid the mandate of OCGA § 33-7-11 (d) and the consequences of not complying with it when and if he perceives a need to pursue uninsured motorist coverage for payment of the potential judgment. The legislature has given to the insurer the opportunity to anticipate underinsured motorist claim liability and to prepare for it. *Peoples*, 211 Ga. App. at 56. The concept underlying the GIIP Act even more strongly requires such precautionary action on the part of the plaintiff; otherwise, he has *done nothing* to exhaust first his rights against his own carrier, and what rights he had to claim coverage from his own insurer die on the vine. The GIIP presumes any insurer may potentially become insolvent, and so should the careful plaintiff. The solvent insurer's *potential* liability as primary insurer is what the legislature intended to capture by making it the plaintiff's obligation to "exhaust first his rights" under his solvent insurer's policy — *whatever* that means. And he cannot, at least in this case, "exhaust" his rights under his policy unless he serves his insurer in a timely manner as required by the policy and by law.

Accordingly, I disagree with the majority's ruling which, contrary to law, allows a plaintiff to avail himself of the GIIP without having exhausted his rights against his own solvent insurer.

I am authorized to state that Chief Judge Beasley and Judge Andrews join in this dissent.

DECIDED DECEMBER 5, 1996 —
RECONSIDERATION DENIED DECEMBER 20, 1996 

*Savell & Williams, Charles M. Dalziel, Jr., Laura A. Gaughan,* for appellant.

*W. Benjamin Ballenger,* for appellee.