# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01840-SCT

*MISSISSIPPI INSURANCE GUARANTY ASSOCIATION*

*v.*

*BRIDGETTE BLAKENEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/2008 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLIFFORD C. WHITNEY, III |
| ATTORNEYS FOR APPELLEE: | S. WAYNE EASTERLING |
| | JOHN RAYMOND TULLOS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND RENDERED - 01/13/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     When the workers' compensation carrier making payments to Bridgette Blakeney was declared insolvent, its claims were transferred to the Mississippi Insurance Guaranty Association (MIGA),[1] which, upon discovering Blakeney had received a settlement of $60,000 from her employer's uninsured motorist (UM) carrier,[2] petitioned the Workers'

---

[1] MIGA was established by the Legislature to assume limited claim responsibility for the claims of insolvent insurance companies. *See generally* Miss. Code Ann. §§ 83-23-1 to 83-25-235 (Rev. 1999).

[2] A UM carrier is an insurance company providing coverage for the negligence of an uninsured motorist. *See generally* Miss. Code Ann. §§ 83-11-101 to 83-11-111 (Rev. 1999).

Compensation Commission ("Commission") for an offset of $100,000 – the full UM policy limits. The workers' compensation administrative law judge (ALJ) found MIGA's credit was limited to the $60,000 actually paid, but the full Commission noted that MIGA stood in the shoes of a compensation carrier, relied on caselaw that exempts UM benefits from a compensation carrier's subrogation rights, and held that MIGA was entitled to no credit. The circuit court and the Court of Appeals affirmed the Commission, but we reverse, finding that MIGA must comply with a statute that requires it to offset the $60,000 actually paid.

## BACKGROUND

¶2.     After she was injured in an automobile accident, Blakeney collected the $10,000 policy limits of the other driver's liability policy, settled for $60,000 of the $100,000 policy limits of her employer's UM policy, and because the accident was work-related, began receiving workers' compensation ("comp") benefits from her employer's comp carrier, Coregis Insurance Company. After Coregis was declared insolvent, its claims, including Blakeney's, were assumed by MIGA.

¶3.     After it started paying Blakeney's comp benefits, MIGA learned of the $70,000 she had collected from the two insurance companies, prompting it to petition the Commission to allow it to suspend paying her benefits until her accrued claims exceeded the $70,000 she already had collected. Upon reflection, MIGA amended its petition, claiming that, rather than the $70,000 the two insurance companies had paid, it actually was entitled to a credit of $110,000 – their combined policy limits.

¶4.     The ALJ held that, rather than a credit for the full policy limits, MIGA was entitled to offset the $70,000 actually paid, but the full Commission reversed, holding that MIGA was

2

entitled to full credit for the $10,000 paid by the liability policy (less $4,000 in collection costs), but it was not entitled to any credit for the UM policy. Both the circuit court and Court of Appeals[3] affirmed the Commission's order, and we granted MIGA's petition for certiorari.

## ANALYSIS

¶5.    Because most Commission decisions are fact-based, the appellate standard of review for those decisions is deferential.[4] But when the essential facts are undisputed and the issues presented turn on legal questions, we must apply our own interpretation of the law.[5]

**I.    MIGA was created by the Legislature, and its responsibilities are controlled by statute.**

¶6.    An insurance policy is a contract with an insurance company, whose duty to pay claims ordinarily is contractual. But when the insurance company becomes insolvent, its policyholders face a substantial risk that their legitimate claims will be delayed or not paid at all. To address this problem, the Legislature enacted the Mississippi Insurance Guaranty Association Law (the "MIGA Act"), creating MIGA.[6]

---

[3] *Miss. Ins. Guar. Ass'n v. Blakeney*, 2009 WL 4592356, at *1 (Miss. Ct. App. Dec. 8, 2009).

[4] *Total Transp., Inc. of Miss. v. Shores*, 968 So. 2d 400, 404 (Miss. 2007) (*citing Smith v. Jackson Constr. Co.*, 607 So. 2d 1119, 1124 (Miss. 1992); *Georgia Pac. Corp. v. Taplin*, 586 So. 2d 823, 826 (Miss. 1991)) (internal citations omitted).

[5] *KLLM, Inc. v. Fowler*, 589 So. 2d 670, 675 (Miss. 1991).

[6] Miss. Code Ann. § 83-23-103 (Rev. 1999) ("The purpose of [MIGA] is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . .").

¶7. MIGA's statutory purpose is to "cover claimants who would otherwise not be fully compensated as a result of the insolvency of an insurer."[7] As noted by the Commission and the Court of Appeals, the MIGA Act provides that MIGA shall be

> deemed the insurer to the extent of the obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.[8]

¶8. This "deemed the insurer" language has produced the aphorism: "MIGA stands in the shoes of an insolvent insurer."[9] But an insolvent insurer's shoes are not always a perfect fit. Just as surely as the insolvent insurer's "duties and obligations" pass to MIGA under one subsection of the statute, they are limited under another subsection that says MIGA may pay covered claims only "to the extent of the association's obligation."[10]

¶9. The "association's obligation" often does not equal the insolvent insurer's obligations under the policy. For instance, MIGA is statutorily prohibited from paying punitive damages,[11] and its authority to pay claims is limited to claims of Mississippi residents, or concerning Mississippi property.[12] And regardless of the limits of the underlying policy, MIGA's liability for most claims is capped at $300,000.[13]

---

[7] ***Nat'l Union Fire Ins. Co. v. Miss. Ins. Guar. Ass'n***, 990 So. 2d 174, 181 (Miss. 2008).

[8] ***Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n***, 560 So. 2d 129, 135 (Miss. 1989).

[9] *See, e.g.*, ***Nat'l Union Fire***, 990 So. 2d at 177; ***Miss. Ins. Guar. Ass'n v. Byars***, 614 So. 2d 959, 964 (Miss. 1993); ***Bobby Kitchens***, 560 So. 2d 129, 135 (Miss. 1989).

[10] Miss. Code Ann. § 83-23-115(1)(d) (Rev. 1999).

[11] Miss. Code Ann. § 83-23-109(f) (Rev. 1999).

[12] *Id.*

[13] Miss. Code Ann. § 83-23-115(1)(a)(iii) (Rev. 1999).

4

¶10. MIGA's duty and authority to pay claims – including Blakeney's – must be filtered through these, and all other MIGA Act limitations, and we must respect and apply those limitations, even where they would not have applied to the insurance company.[14] We now turn to the statutory limitation most pertinent to this case.

**II.  The MIGA Act's exhaustion provision requires MIGA to offset Blakeney's UM benefits.**

¶11. The MIGA Act states:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy.[15]

¶12. This statute – often called MIGA's "exhaustion provision" – seems clear enough: "Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim" defines the policyholders to whom the statute applies; "shall be required to exhaust first his right under such policy" defines the policyholder's duty; and "Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy" establishes MIGA's duty when the statute applies.

¶13. Applying the statute to the facts of this case:  Blakeney had a claim against her employer's solvent UM carrier for the same loss (the damages she suffered from the automobile accident) being paid by MIGA; she was required to "exhaust" her right under the

---

[14] ***Byars***, 614 So. 2d at 963 (internal citations omitted).

[15] Miss. Code Ann. § 83-23-123(1) (Rev. 1999).

UM policy – which she did by settling for $60,000 and signing a release; and MIGA was required to reduce its "amount payable" on Blakeney's claim "by the amount of [Blakeney's] recovery" under the UM policy which, as correctly concluded by the ALJ, was the $60,000 actually recovered, not the $100,000 policy limits demanded by MIGA.

¶14.    The dissent proposes an interesting interpretation of the statute, one which would require the claim against the *solvent* insurer to meet the statutory definition of "covered claim"[16] – a requirement that would be difficult to meet, since MIGA's "covered claims" come only from *insolvent* insurers. We decline to adopt such a reading, because it is plainly contradicted by the statute. By definition, a "covered claim" can be only a claim against an "insolvent insurer."[17] It is therefore impossible for the claim against the *solvent* insurer to meet the statutory definition of "covered claim," which requires that the insurer be *insolvent*. The statute's clear meaning is that MIGA may reduce its obligation to pay a "covered claim" (which must have come from an insolvent insurer) where the beneficiary recovers on the same claim from a solvent insurer. Here, the "claim" is for injuries and lost wages caused by an accident; so the claim against the workers' compensation carrier (for reimbursement of those losses) was the same legal claim as the one against the UM carrier. Our reading and conclusion today is in complete harmony with our prior holding in *Leitch v. Mississippi Insurance Guaranty Association*.[18]

---

[16] Diss. Op. ¶ 32.

[17] Miss. Code Ann. § 83-23-109(f).

[18] *Leitch v. Miss. Ins. Guar. Ass'n*, 27 So. 3d 396 (Miss. 2010).

**III.    The MIGA Act has no exceptions for UM policies, workers' compensation policies, or the Workers' Compensation Law.**

¶15.    The question of whether UM benefits are off limits to MIGA was answered in *Leitch*, decided in 2010, in which MIGA assumed the claims of Reliance Insurance Company, the tortfeasor's insolvent liability carrier.[19] MIGA paid Leitch under the liability policy, and then asserted it was entitled to an offset for Leitch's UM benefits.[20] Leitch argued that his UM benefits did not reduce MIGA's obligation to pay Reliance's claims.[21] We held that MIGA was entitled to the offset because the MIGA Act included no exemption for UM coverage.[22]

¶16.    In appealing the ALJ's decision to the full Commission, Blakeney successfully argued that *Leitch* was distinguishable because, in her case, MIGA stood in the shoes of a comp carrier, bringing into play the Workers' Compensation Law's subrogation provision, which says:

> The commencement of an action by an employee . . . **against a third party** for damages by reason of the injury . . . shall not affect the right of the employee . . . to recover compensation, but any amount recovered by the injured employee . . . from a third party shall be applied as follows: reasonable costs of collection as approved and allowed . . . by the commission . . . shall be deducted; the remainder . . . shall be used to discharge the legal liability of the . . . insurer . . . .[23]

¶17.    The Commission found that MIGA was not entitled to any credit under the UM policy, citing as its authority our decision in *Cossitt v. Nationwide Mutual Insurance Co.,*

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 401.

[23] Miss. Code Ann. § 71-3-71 (Rev. 2000) (emphasis added).

7

in which we held that, although Section 71-3-71 does allow comp carriers to subrogate against liable third parties, it does not allow them to subrogate against UM carriers, who are not liable "third parties" within the meaning of the subrogation provision.[24] We find no connection between a comp carrier's Section 71-3-71 subrogation rights and the MIGA Act's exhaustion provision.

¶18. Section 71-3-71 allows comp carriers to pursue and recover from liable third parties and, as acknowledged by the Commission, UM carriers are not "third parties" under that statute (thus, our holding in *Cossitt*). So while we agree that MIGA has no authority under Section 71-3-71 to take an offset for UM benefits, we cannot agree that the Legislature is precluded from granting that authority under another statute – which we find it clearly did under Section 83-23-123(1).

¶19. In its order, the Commission stated:

> We do not for a second deny that MIGA, under § 83-23-123(1) is entitled to have "any amount payable [by it to Blakeney] on a covered claim under this article . . . reduced by the amount of any recovery" **which Blakeney obtains from a liable third party**.

(Emphasis added.) It appears the Commission reached its mistaken conclusion by ending its quote too quickly, and completing the sentence using its own language. The statute actually says – and the Commission's order should have said: "any amount payable [by it to Blakeney] on a covered claim under this article . . . reduced by the amount of any recovery **under such insurance policy**."[25]

---

[24] *Cossitt v. Nationwide Mut. Ins. Co*., 551 So. 2d 879, 887 (Miss. 1989).

[25] Miss. Code Ann. § 83-23-123(1) (Rev. 1999).

¶20.    The Commission's redraft of the statute changed its meaning in several important ways:

- By removing the phrase "insurance policy," the Commission effectively removed UM policies, which, according to *Leitch*, are fair game for MIGA.

- By writing in the phrase "a liable third party," the Commission brought into play *Cossitt's* exclusion of UM carriers and their policies from workers' comp subrogation.

Then, having transformed the meaning of the statute, the Commission used it to reach three erroneous conclusions:

- "[T]he amount by which MIGA may effectively reduce the amount it has paid in workers' compensation benefits necessarily must be determined by reference to Section 71-3-71. . . ."

- "MIGA may, under Section 83-23-123(1), effectively reduce the amount of workers' compensation benefits payable to Blakeney by the 'net proceeds,' under Section 71-3-71, recovered by Blakeney in her third party claim."

- "[U]nquestionably, under Section 71-3-71, MIGA has no claim to the uninsured motorist benefits . . . since the Employer's own uninsured motorist carrier is not a 'third party' within the meaning of the statute."

¶21.    While we agree that a UM carrier "is not a 'third party' within the meaning of the [workers' compensation] statute," it unquestionably is an "insurer" within the meaning of the MIGA statute.  In essence, by changing the statute's language to label UM carriers as "third parties," the Commission brought MIGA's exhaustion provision under the purview of Section 71-3-71 – a statute that allows comp carriers to recover their payments from third[26] parties.  Then, the Commission cited *Cossitt* for the proposition that UM carriers are *not* third

---

[26] Miss. Code Ann. § 71-3-71 (Rev. 2000).

9

parties for purposes of workers' comp subrogation, thereby insulating from MIGA Coregis' $60,000 payment to Blakeney.

¶22.    We find that the Commission's interpretation and application of Section 83-23-123(1) was clearly erroneous; Section 71-3-71 is not applicable to the calculation of MIGA's credit under Section 83-23-123(1); and when MIGA assumes the claims of a comp carrier, Section 71-3-71 does not deprive it of credit for payments made by UM carriers.

## IV.    MIGA is not entitled to credit for the full $100,000 policy limits, but is entitled to credit for the $60,000 actually paid.

¶23.    MIGA argues that, even though Blakeney settled with the UM carrier for $60,000, it nevertheless is entitled to credit for the entire $100,000 policy limits.  MIGA concedes there is no Mississippi authority on point, but cites the decisions of other states interpreting guaranty association statutes similar to Mississippi's.  We decline to follow the guidance of other state's decisions because our statute is clear and unambiguous.

¶24.    Blakeney settled with the UM carrier for $60,000, and we find no evidence or suggestion that the settlement involved fraud or bad faith.  Applying Section 83-23-123(1)[27] to these undisputed facts, our resolution of this issue is clear:

> [Blakeney,] having a claim against [the UM policy] which [was] also [a claim covered by MIGA], [was required to, and did] exhaust first [her] right under [the UM] policy.  Any amount payable [by MIGA] . . . shall be reduced by the amount of any **recovery** [$60,000] under [the UM policy].

¶25.    In crafting this statute, the Legislature selected the word "recovery" – a word bristling with clarity, void of ambiguity, and, for our purposes, easily applied.  Recovery, in the

---

[27] Miss. Code Ann. § 83-23-123 (Rev. 1999).

context of the statute and this case, means Blakeney's recovery. We find no merit in MIGA's argument on this issue.

**V. When MIGA applies credit under Section 83-23-123(1) to its amount payable, it may not deduct collection costs under Section 71-3-71.**

¶26. The Commission held that MIGA was entitled to credit for the $10,000 liability policy under Section 83-23-123(1), filtered through Section 71-3-71's cost-deduction provision, resulting in "net proceeds" to MIGA of $6,000. Although MIGA does contest the Commission's use of Section 71-3-71 to deduct costs, neither MIGA nor Blakeney challenges or briefs the Commission's determination that Section 83-23-123(1) is the source of MIGA's claim and entitlement to the liability policy proceeds. Without analyzing the correctness of the Commission's conclusion on this point, we shall accept it as true.

¶27. When a comp carrier exercises its subrogation rights under the workers' comp statutes, the following language from that statute comes into play: "any amount recovered by the injured employee . . . from a third party shall be applied as follows: reasonable costs of collection as approved and allowed . . . by the commission . . . shall be deducted. . . ."[28] This subrogation statute clearly allows the Commission to award costs.

¶28. Had MIGA pursued the liability policy proceeds under the subrogation statute, the Commission would have been justified in deducting costs under the provision. But as noted earlier, the Commission, MIGA, and Blakeney agree that MIGA's claim is properly analyzed under Section 83-23-123(1), which has no cost-reduction provision.[29] And other than the

_____

[28] Miss. Code Ann. § 71-3-71 (Rev. 2000).

[29] Miss. Code Ann. § 83-23-123(1) (Rev. 1999).

11

cost-reduction provision of the workers' comp subrogation statute, Blakeney advanced no theory or argument that she was entitled to recover her attorney fees.

¶29. The determination of this issue rests on MIGA's authority for the credit. When it takes credit under Section 83-23-123(1), it is not, as we have said, subject to the provisions of Section 71-3-71, including its cost-reduction provision. In this case, Section 83-23-123(1) controls, and we find no authority for the Commission's reduction of costs.

## CONCLUSION

¶30. MIGA is entitled to a $70,000 reduction in the amount it is obligated under the MIGA Act to pay on Blakeney's claim. We therefore reverse the decisions of the Court of Appeals and the trial court, and render judgement for MIGA.

¶31. **REVERSED AND RENDERED.**

**CARLSON, P.J., RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., KITCHENS AND PIERCE, JJ.,**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶32. Before applying MIGA's exhaustion provision, the Court should determine whether Blakeney's claim for UM benefits is also a "covered claim." Blakeney's claim for UM benefits differs from her MIGA-assumed claim for workers' compensation benefits. Because her UM-benefit claim is not also covered claim, the MIGA Act does not require a reduction. Therefore, I respectfully dissent.

¶33. The MIGA Act's exhaustion provision must be read in conjunction with Mississippi Code Section 83-23-109(f), which defines "covered claim." Miss. Code Ann. § 83-23-109(f) (Rev. 1999); Miss. Code Ann. § 83-23-123(1) (Rev. 2009). Section 83-23-109(f) explains

12

that a covered claim is "an *unpaid claim*, . . . *which arises out of* and is within the coverage . . . of the applicable limits of an insurance policy . . . issued by an insurer, if such insurer becomes an insolvent insurer. . . ." Miss. Code Ann. § 83-23-109(f) (emphasis added). The relevant MIGA statutes and this Court's opinion in *Leitch v. Mississippi Insurance Guaranty Association*, 27 So. 3d 396, 400 (Miss. 2010) do not state that a party's claim against a solvent insurer becomes a covered claim subject to MIGA's exhaustion provision simply because both claims originated from the same injurious event. *See* Maj. Op. ¶ 13 ("Blakeney had a claim against her employer's solvent UM carrier for the same loss[,] the damages she suffered from the automobile accident[,] being paid by MIGA.").

¶34.    MIGA may reduce its obligation to pay when a party collects benefits on a claim that is also a covered claim. *See* Miss. Code Ann. § 83-23-123(1) (Rev. 1999). A covered claim is a claim that "arises" from an insolvent insurer's coverage. Miss. Code Ann. § 83-23-109(f) (Rev. 1999). In other words, when the insured recovers on a claim that is the same type of claim assumed by MIGA, MIGA must reduce its payment by the amount of that recovery. Thus, the exhaustion provision prevents duplicate recovery for identical claims.

¶35.    The Court explained this concept in *Leitch*. After an automobile accident, Leitch filed suit against Reliance, the negligent driver's insurance company. *Leitch*, 27 So. 2d at 397. After Reliance later was declared insolvent and MIGA assumed its obligations, Leitch joined in the suit State Farm, his own insurance company, which initiated the UM coverage on his policy. *See id. See also Leitch v. Miss. Ins. Guar. Ass'n*, 27 So. 3d 405, 409 (Miss. Ct. App. 2010). Eventually, State Farm, the solvent company, settled with Leitch, and MIGA

attempted to reduce its obligation to Leitch by the settlement amount. *Leitch*, 27 So. 3d at 398. This Court determined that Leitch's claim against State Farm (the solvent insurer) was the same as the covered claim he had against MIGA. *Id.* at 400. Because Leitch would have recovered twice on the same type of claim, MIGA could reduce its obligation by the amount of Leitch's recovery under the State Farm policy. *See id.* In other words, *Leitch* did not authorize MIGA automatically to reduce its obligation when the insured had received UM benefits. *See id.* at 401.

¶36. Here, Blakeney's claim against Coregis and Progressive is wholly unrelated to her covered claim, which precludes application of the exhaustion provision. *See* Miss. Code Ann. § 83-23-123(1) (Rev. 2009); *Leitch*, 27 So. 3d at 400. Blakeney's claim against Coregis and Progressive involved UM benefits, while her claim against MIGA involved workers' compensation benefits. Because her claim for UM benefits is not the same as her covered claim for workers' compensation benefits, MIGA cannot suspend its obligation to pay. *See Leitch*, 27 So. 3d at 400. Further, unlike Leitch's claim, Blakeney's claim for UM benefits from the solvent insurance companies did not arise from another insurer's insolvency.

¶37. In sum, under the MIGA statutes and *Leitch*, Blakeney's claim against Coregis and Progressive for UM benefits is not the same as her covered claim for workers' compensation benefits. Any amount payable by MIGA on her covered claim for workers' compensation benefits cannot be reduced by her recovery from Coregis and Progressive. Because the exhaustion provision does not apply, MIGA must pay Blakeney's claim pursuant to

14

Mississippi Code Section 83-23-115(1)(a)(i), which provides that MIGA shall satisfy its obligation to a claimant by paying "[t]he full amount of a covered claim for benefits under a workers' compensation insurance coverage. . . ." Miss. Code Ann. § 83-23-115(1)(a)(i) (Rev. 2009).

¶38.    Therefore, I would hold that MIGA is not entitled to a $70,000 reduction in the amount it is obligated to pay on Blakeney's claim.

**GRAVES, P.J., KITCHENS AND PIERCE, JJ., JOIN THIS OPINION.**