**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1531.  GEORGIA  INSURERS  INSOLVENCY  POOL  v.     GS-057
DUBOSE.

A18A1532.  DUBOSE  v.  GEORGIA  INSURERS  INSOLVENCY    GS-058
POOL.

GOSS, Judge.

After she was injured in an automobile collision while in the scope of her employment, Carla DuBose filed for workers' compensation benefits. After her employer's workers' compensation insurer became insolvent, the Georgia Insurers Insolvency Pool (the "Pool") took over her claim. The Pool then filed the instant declaratory judgment action asking the trial court to declare that the exhaustion provision of the Georgia Insurer's Insolvency Pool Act (the "Pool Act"), OCGA § 33-36-14, required that any proceeds that DuBose received from other solvent insurance carriers (including settlements from the automobile liability insurance for the other

driver and her own uninsured/underinsured policies, as well as benefits received under her disability policy) should reduce her claim against the Pool by the full amounts received. The trial court denied the Pool's motion for summary judgment, holding that OCGA § 33-36-14 (a) limited "the offset to money recovered for lost wages and medical expenses – 'claims' that could be made under the workers' comp[ensation] statute[.]" The trial court further held that an issue of fact existed as to the purpose of the insurance proceeds DuBose had already received. We granted the parties' cross-motions for interlocutory appeal.

In Case No. A18A1531, the Pool appeals from the trial court's order, arguing that the Pool is entitled to offset *any* money recovered by DuBose under policies of solvent insurers. The Pool argues, alternatively, that the trial court erred in concluding that a fact issue precluded summary judgment. In Case No. A18A1532, DuBose filed a cross-appeal, contending that the trial court erred to the extent that the Pool is entitled to *any* offset from proceeds she received from other insurers. Because we conclude that the language of the Pool Act's exhaustion provision at OCGA § 33-36-14 (a) does not require solvent and insolvent carriers provide identical coverage, we reverse the trial court's denial of the Pool's motion for summary judgment in part,

2

vacate it in part and remand the case for further proceedings consistent with this opinion.

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Footnote omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303-304 (664 SE2d 296) (2008).

The relevant facts are not in dispute. This case arose from a motor vehicle collision on June 20, 2014, between Carla DuBose and Kimberly Dyar. DuBose was injured when her vehicle was struck by a vehicle driven by Dyar.

At the time of the collision, DuBose was employed by Compassionate Care Hospice ("Compassionate") and she was working within the course and scope of her employment. DuBose then filed a claim with the State Board of Workers' Compensation. Compassionate had a workers' compensation policy issued by Lumberman's Underwriting Alliance ("Lumberman's"). On May 23, 2016, Lumberman's was placed into liquidation, with all of its Georgia claims transferred

3

to the Pool by the liquidator, and the Pool undertook responsibility for the administration of Lumberman's claims. These claims included DuBose's workers' compensation claim.

DuBose also filed a claim against Dyar, the driver responsible for the collision. Dyar was insured by Geico Insurance Company ("Geico"). On December 17, 2014, DuBose settled with Geico for the automobile liability insurance policy limits of $250,000.

At the time of the collision, DuBose had additional insurance under two uninsured/underinsured motorist coverage policies and two personal disability policies issued by State Farm Insurance Company ("State Farm"). DuBose settled with State Farm for $200,000 under the uninsured/underinsured motorist carrier policies. State Farm denied her coverage as to one of the disability policies; however, she is receiving $540 per month for up to 58 months under the other personal disability policy.[1]

Case No. A18A1531

---

[1] The sparse appellate record does not indicate whether the State Farm disability policy is providing payments to DuBose for claims related to the same automobile accident at issue in the instant case. Copies of these insurance policies are not in this record.

1. In A18A1531, the Pool argues that the trial court erred by limiting the offset rights of the Pool under OCGA § 33-36-14 to amounts received by DuBose specific to lost wages and medical expenses. The Pool claims that its obligations do not arise unless and until the amounts owed under the workers' compensation claim exceed the amount paid out by *all* other solvent insurers, regardless of what coverage was provided by the solvent policies. Because we conclude that OCGA § 33-36-14 (a) does not require the policies of the solvent and insolvent carriers to provide identical coverage and the Pool is entitled to offset the amounts recovered from the Geico automobile liability policy and the State Farm uninsured/underinsured motorist policies, we reverse the trial court's denial of the Pool's motion for summary judgment in part.

At the outset, we note that the interpretation of a statute is a question of law, which this Court "review[s] de novo on appeal." (Punctuation omitted.) *Brantley Land & Timber, LLC v. W&D Investments, Inc.*, 316 Ga. App. 277, 279 (729 SE2d 458) (2012). When interpreting any statute, we begin our analysis with "familiar and binding canons of construction." *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014). In considering the meaning of a statute, our charge as an appellate

court is to "presume that the General Assembly meant what it said and said what it meant." (Punctuation and footnote omitted.) Id. Accordingly,

> we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker in the English language would, and seek to avoid a construction that makes some language mere surplusage.

(Punctuation and footnotes omitted.) *Harris v. Mahone*, 340 Ga. App. 415, 417-418 (1) (797 SE2d 688) (2017). Accord *Oxendine v. Comm'r of Ins. of N. C.*, 229 Ga. App. 604, 607 (1) (a) (494 SE2d 545) (1997).

The Georgia Insurers Insolvency Pool is a non-profit legal entity created by the Georgia General Assembly and governed by the Pool Act, OCGA § 33-36-1 et seq. OCGA § 33-36-6. The Pool provides a limited safety net for insurers that experience liquidation pursuant to the "Insurers Rehabilitation and Liquidation Act," OCGA § 33-37-1 et seq. When an insurance company is placed into liquidation, all existing claims of the insolvent carrier are transferred to the Pool by the liquidator and the Pool undertakes responsibility for the handling and administration of those claims in keeping with the Pool Act. OCGA § 33-36-9. The Pool then steps into the shoes of the insolvent insurer: "The Pool shall be deemed the insurer only to the extent of its

6

obligation on the covered claims and to such extent, subject to the limitations provided in this chapter, shall have all rights, duties, and obligations of the insolvent insurer. . . ." OCGA § 33-36-9. The Pool is then "responsible for the investigation, adjustment, compromise, settlement, and payment of covered claims; for the investigation, handling, and denial of noncovered claims; and for the management and investment of funds administered by the pool." OCGA § 33-36-2.

At issue in the instant case is the interpretation of the exhaustion of other insurance and set-off provision of the Pool Act, OCGA § 33-36-14. Under this provision, a claimant is required to exhaust certain sources of insurance coverage before seeking any payment of his or her claim from the insolvency pool. OCGA § 33-36-14 (a) provides:

> any person having *a claim* against a policy or an insured under a policy
> issued by an insolvent insurer, *which claim* is a covered claim[2] and *is*

---

[2] The Pool Act defines a "covered claim" as "an unpaid claim which: (i) [a]rises out of a property or *casualty insurance policy* issued by an insurer which becomes an insolvent insurer . . ." and (ii) [i]s within any of the classes of claims under subparagraph (B) of this paragraph." OCGA § 33-36-3 (4) (A) (Emphasis supplied.) Subparagraph (B) lists several types of claims that can be covered, including "[a] claim under a liability or workers' compensation insurance policy when either the insured or third-party claimant was a resident of the state at the time of the insured event." OCGA § 33-36-3 (4) (B) (v). "Property and casualty insurance policy" is broadly defined, but some disability claims are excluded. OCGA § 33-36-3 (11) (B).

7

*also a claim within the coverage of any policy issued by a solvent insurer*, shall be required to exhaust first his or her rights under such policy issued by the solvent insurer. The policy of the solvent insurer shall be treated as primary coverage and the policy of the insolvent insurer shall be treated as secondary coverage and his or her rights to recover such claim under this chapter *shall be reduced by any amounts received from the solvent insurers*.

(Emphasis supplied).

(a) OCGA § 33-36-14 (a)'s use of the word "claim."

Interpreting OCGA § 33-36-14 (a), we find that before a policy issued by a solvent insurer may be deemed primary, two conditions must be met. First, the claimant must "hav[e] a claim against a policy or an insured under a policy issued by an insolvent insurer," which is a "covered claim" under the policy of the insolvent insurer; and second, "[that] which claim [must] also [be] a claim within the coverage of any policy issued by a solvent insurer." OCGA § 33-36-14 (a). As is more thoroughly discussed in Division (1) (b), once a policy issued by a solvent insurance

---

Workers compensation insurance falls within the definition of "casualty insurance policy." See OCGA § 33-36-3 (11) (B); OCGA § 33-7-3 (2).

8

company is deemed primary, the claimant's rights to recover "shall be reduced by *any amounts received* from the solvent insurers." OCGA § 33-36-14 (a).

The Pool Act does not expressly define the term "claim." The Pool argues that because DuBose's personal injury and disability claims arose from the same collision, the Pool's obligation for workers' compensation benefits should be offset by DuBose's recovery under the other, solvent, insurance policies. DuBose contends, on the other hand, that "claim" should be interpreted more narrowly to include only "claims for the types of damages that are the Pool's responsibility." DuBose argues that her workers' compensation claim is not a "claim within the coverage" of the other solvent policies in this case because it is not under an insurance policy that covers the same liability and risks that are covered by the policies of the solvent insurers. Thus, DuBose argues, because at least some of the damages covered by the benefits paid by solvent insurers involve damages not available under the workers' compensation system, "an offset should be allowed only to the extent those payments duplicate payments for which the Pool would have been responsible."

Although neither the Pool Act nor Georgia case law has addressed the meaning of "claim" in the exhaustion provision at OCGA § 33-36-14, other jurisdictions have done so. All fifty states have enacted similar guaranty statutes to protect the insured

9

of insolvent insurance companies from "suffering the hardship of uncompensated losses." (Citation omitted.) *Mosier v. Oklahoma Prop. and Cas. Ins. Guar. Ass'n*, 890 P.2d 878, 880 (Okla. 1995). Accordingly, we look to case law from other states interpreting similar laws for guidance. See, e. g., *Smith v. Stewart*, 291 Ga. App. 86, 92 (1) (a), n. 7 (660 SE2d 822) (2008) ("Because Georgia law on defamation claims . . . is relatively underdeveloped, the parties rely heavily on the laws of other states. . . . On those issues that have not been fully addressed in Georgia, we also look to the laws of other states and the federal courts as persuasive authority").

In *Bird v. Norpac Foods, Inc.*, 934 P.2d 382 (325 Or. 55) (1997), the Supreme Court of Oregon reviewed the relationship between a "claim" under an insurance policy against a solvent insurer and a "covered claim" under an insurance policy against an insolvent insurer, the same terms used in OCGA § 33-36-14 (a), and concluded that the "legislature intended that the word 'claim' refer simply to a generic assertion of a right to property or money arising out of a common injurious

10

event." (Footnote omitted.) Id at 63-64.[3] The Oregon Supreme Court further explained that

> any 'claim' against a solvent insurer arising out of a particular injury, without regard to the operative facts or the source of the legal right that would entitle a claimant to a recovery, must be exhausted before that claimant may pursue a 'covered claim' against an insolvent insurer arising out of the same injury. In light of the legislature's overarching goal of ensuring that [the guaranty association] remain the carrier of last resort, . . . we conclude that [the claimant's] claim for workers' compensation benefits is logically indistinguishable from a tort claim against a solvent insurer.

(Citation omitted.) Id. Similarly, Georgia's Pool Act does not distinguish between a workers' compensation claim and a tort claim. There is nothing in the plain language of the Pool Act to indicate that its use of the word "claim" is restricted to the same type of coverage for which the Pool is responsible.

Decisions by other states also support the Pool's contention that the coverage provided by the solvent carrier does not have to be the same type of coverage

---

[3] Oregon's "[p]riority of claims" statute provides, in relevant part, "[a]ny person who has a *claim* under an insurance policy against an insurer other than an insolvent insurer which would also be a *covered claim* against an insolvent insurer must first exhaust the remedies under such policy[.]" (Emphasis supplied.) O. R. S. § 734.640.

provided by the insolvent carrier. In *Mississippi Ins. Guaranty Assoc. v. Blakeney*, 54 So.3d 203, 206 (II) (Miss. 2011), the Supreme Court of Mississippi interpreted a provision similar to OCGA § 33-36-14[4] to conclude that the Mississippi Insurance Guaranty Association ("MIGA") could offset the amounts paid to a claimant by other solvent insurance policies before it was liable to pay for her claims under her insolvent workers' compensation carrier. The claimant in *Blakeney* was involved in an automobile accident during the course of her employment. She collected the policy limits of the adverse driver's liability insurance policy and settled with her employer's underinsured/uninsured insurance policy, and then began receiving workers' compensation benefits from her employer's workers' compensation carrier. When her

---

[4] The relevant portion of the Mississippi Insurance Guaranty Association Act provides that

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy.

Miss. Code. Ann. § 83-23-123 (1).

12

workers' compensation carrier was deemed insolvent, MIGA took over that claim. Id. at 204. The Mississippi Supreme Court held that MIGA was entitled to offset the amounts paid by the other insurance policies per the clear language of the exhaustion provision of the guaranty statute.[5] Id. at 206-207. See also *California Ins. Guarantee Assoc. v. Workers' Compensation Appeals Board*, 112 Cal.App.4th 358 (5 Cal.Rptr.3d 127) (2003) (the California Insurance Guarantee Association was entitled to offset a claimant's workers' compensation benefits being paid by the guaranty association by amounts the claimant had received from an adverse driver's liability insurance and from the claimant's own uninsured/underinsured motorist carrier).

Based upon the above, we conclude that the language of OCGA § 33-36-14 (a) means that the insurance policies issued by Geico, as Dyar's automobile liability insurance carrier, and by State Farm, as uninsured/underinsured motorist coverage carrier, are primary to the Pool coverage as they have paid claims to DuBose within the coverage of these policies arising from this collision.

---

[5] DuBose claims that persuasive authority from Mississippi is negated because its workers' compensation laws differ from Georgia's. However, we conclude that the Pool's rights in the instant case are not based in the workers' compensation statute, but instead, are based solely on the language of the Pool Act, OCGA § 33-36-14. See, e. g., *Mississippi Guaranty Assn.*, 54 So.3d at 208 ("We find no connection between a comp carrier's Section 71-3-71 subrogation rights and the [guaranty association] Act's exhaustion provision").

(b) The Pool Act's Exhaustion Provision, OCGA § 33-36-14 (a).

The Pool next argues that the trial court erred in limiting the offset rights of the Pool under OCGA § 33-35-14 to amounts received by DuBose specific to lost wages and medical expenses. We agree.

As originally enacted, the exhaustion provision in the Pool Act provided, in pertinent part, that "any person . . . having a claim against his insurer under any insolvency provision contained in his insurance policy, which claim arises out of the insolvency of a participating insurer, shall be required to exhaust first his rights *under the policy*; and his rights to recover such claim [under the Pool Act] shall be reduced accordingly." (Emphasis supplied.) Ga. Laws 1970, p. 700, §11. In 1989, however, the above-quoted exhaustion provision was amended and re-written to exhaust claims "within the coverage of *any policy* issued by a solvent insurer[.]" (Emphasis supplied.) Ga. Laws 1989, p. 74, §8. It was again revised in 2005, and currently reads that a claimant's "rights to recover such claim under this chapter shall be *reduced by any amounts received from the solvent insurers*." (Emphasis supplied.) OCGA § 33-36-14 (a) (Ga. Laws 2005, Act 108, §20). In addition, the 2005 amendment added subsection (c) to OCGA § 33-36-14, which provides that "[t]o the extent that the pool's obligation is reduced by application of this Code section, the liability of the

14

person insured by the insolvent insurer's policy for the claim shall be reduced in the same amount." OCGA § 33-36-14 (c).

The General Assembly has amended the exhaustion provision, OCGA § 33-36-14 (a), on multiple occasions, expanding it to include the exhaustion of *all* applicable insurance coverages. See, e. g., *G & MSS Trucking, Inc. v. Rich*, 224 Ga. App. 130, 132-133 (2) (479 SE2d 761) (1996) (trial court erred by failing to reduce the amount of claimant's judgment against the Pool by the amount of medical expenses he had already received from his own carrier under medical payments coverage). The language of OCGA § 33-36-14 (a) allows the Pool to offset claims that are "within the coverage of *any policy* issued by the solvent insurer." (Emphasis supplied.) OCGA § 33-36-14 (a). The term "any policy" clearly expands the possibilities of policies to offset, rather than to restrict them.

Based upon the above, we find that the trial court in the instant case erred by limiting the offset rights of the Pool under OCGA § 33-36-14 (a) to amounts received by DuBose specific to lost wages and medical expenses. We conclude that the language of OCGA § 33-36-14 (a) does not require that the policy issued by the insolvent carrier under which the claim against the Pool arises has to be for the same type of coverage as provided by the solvent insurer's policy. Further, the plain

15

language of OCGA § 33-36-14 (a) does not require that the amount of offset must be for the "same claim" or for amounts paid by a solvent carrier that are also at issue under the insolvent carrier's policy underlying the claim against the Pool.

The Pool is a statutorily created non-profit entity intended to be a safety net for those whose insurers go out of business. OCGA § 33-36-6 (a). All expenses incurred by the Pool in resolving the claims of an insolvent carrier are borne by the policyholders of member insurers of the Pool. OCGA §§ 33-36-5; 33-36-7.1. As a result, guaranty associations have been viewed by courts as a guarantor of last resort, providing benefits only when there is no other insurance available. See *Bird*, 934 P.2d at 387 ("By protecting claimants and insureds from 'financial loss' resulting from the insolvency of insurers, the legislature did not thereby necessarily intend that claimants receive the exact recovery that they would have received from a solvent insurer, to the detriment of the legislative goal of making [the guaranty association] the insurer of 'last resort'").[6]

---

[6] DuBose argues that Georgia has a "strong public policy of complete compensation[.]" However, there is no language in the Pool Act that demonstrates an intent that an insured be fully and completely compensated under the policy of an insolvent insurer, as suggested by DuBose. In fact, it is clear that the General Assembly has not embraced that public policy in the current version of the Pool Act. Although a former version of the Pool Act provided that it was enacted as "a remedy for covered claims under property and casualty insurance policies when the insurer

16

(c) We next address how our holding applies to the insurance policies that DuBose has received payments from in the instant case. It is clear from the record that the settlements that DuBose received from the adverse drivers' Geico automobile liability policy and her State Farm uninsured/underinsured motorist coverage arise from the automobile collision from which her workers' compensation claim arose.[7]

---

has become insolvent and is unable to perform its contractual obligations[,]" OCGA § 33-36-2 (Ga. L. 1987, p. 3, §33), the General Assembly deleted that language in 2005. See Ga. L. 2005, p. 572, §11.

[7] We note that the appellate record is silent as to whether DuBose settled for the policy limits available under the State Farm automobile underinsured/uninsured motorist coverage or for an amount less than the policy limits. However, this distinction does not matter because the language of the Pool Act's exhaustion provision clearly states that the Pool is entitled to offset only the "amount *received* from the solvent insurers." OCGA § 33-36-14 (a). See *G & MSS Trucking, Inc.,* 224 Ga. App. at 132-133 (2) (Under the Pool Act's exhaustion provision, the "trial court should have reduced the amount of medical payment benefits *actually received* from the final judgment"). See, e. g., *Hasemann v. White*, 686 N.E.2d 571 (177 Ill.2d 414) (1997) (outlining the three different approaches that states have adopted when deciding how a claimant "exhausts" his or her rights under another applicable policy). Under the clear language of the Pool Act's exhaustion provision, which allows for an offset of only the amounts actually *received* by the claimant, it is clear that Georgia has adopted the approach to exhaustion also adopted by, inter alia, Mississippi and Michigan courts. This approach concludes that a claimant who settles with the solvent carrier for less than the policy limits has exhausted his rights and that the guaranty fund's liability is offset by the amount of the settlement received, provided that it was reached in good faith. See *e. g., Watts v. Michigan Dept. of State*, 394 Mich. 350, 357 (231 NW2d 45) (1975); *Blakeney*, 54 So.3d at 209-210 (IV) (Miss. 2011).

17

Accordingly, we reverse the trial court's denial of summary judgment to the Pool as it pertains to its ability to offset the money DuBose received under these policies.

However, the sparse record before us does not make clear whether the money received by DuBose from the State Farm disability policy is to compensate for losses connected with the automobile collision at issue in the instant case. Accordingly, we remand the case to the trial court for further proceeding to determine whether the claims as to the State Farm disability policies arise from the same collision as DuBose's workers' compensation claim and whether any such claims are within the coverage of such disability policies pursuant to OCGA § 33-36-14 (a). The trial court should proceed consistent with this opinion as to any claims for offset as between the State Farm disability policies and the Pool coverage.

2. As a result of our holding in Division 1 of this opinion, we need not address the Pool's remaining enumeration.

Case No. A18A1532

3. In her cross-appeal in Case No. A18A1532, DuBose contends that the Pool is not entitled to any offset for money she received from various automobile liability policies and disability policies because her workers' compensation claim is a separate

18

"claim" under the language of the Pool Act. As a result of our holding in Division 1, we need not address her enumeration.

*Judgment reversed in part and vacated in part, and case remanded with direction. Miller, P. J., and Brown, J., concur.*